IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DAVINA EASTER and<br>JOE EASTER,<br><br>        Plaintiffs,<br><br>    v.<br><br>FARMERS INSURANCE COMPANY,<br>INC.,<br><br>        Defendant. | Case No. 13-3412-CV-S-REL |

### ORDER

Before the court is defendant's motion for summary judgment on count 2 of plaintiffs' first amended complaint (vexatious refusal to pay) on the ground that there was an open question of fact at the time defendant was called upon to pay and there is no evidence that defendant's attitude was otherwise vexatious and recalcitrant. I find that there is no material issue of disputed fact and that defendant is entitled to summary judgment on this claim. Therefore, defendant's motion for summary judgment on count 2 will be granted.

### I.  BACKGROUND

In their amended complaint, plaintiffs allege that on November 12, 2010, plaintiff Davina Easter was driving her vehicle behind a vehicle driven by Jeffrey Warner. A phantom vehicle was ahead of Mr. Warner. The phantom vehicle pulled into the center turn lane and then suddenly pulled back into the driving lane in front of Mr. Warner "causing Mr. Warner to apply his brakes and suddenly and abruptly stop his vehicle. As a result of the sudden stop, Davina's car collided with the rear end" of Warner's car causing a severe collision. The phantom car left the scene. Davina and Joe Easter were insured through defendant Farmer's Insurance Company ("Farmers"). The policy provided for $250,000 in uninsured motorist coverage for two separate vehicles.

On April 10, 2013, plaintiffs, though counsel, sent a letter to Farmers offering to accept the $500,000 in uninsured motorist coverage while alleging $865,911.28 in actual damages. In September 2013, plaintiffs filed an action in the Circuit Court of Greene County, Missouri, alleging four counts: uninsured motorist, vexatious refusal to pay, breach of good faith and fair dealing, and loss of consortium. On November 1, 2013, defendant removed the case to federal district court and simultaneously filed a motion to dismiss the breach of good faith and fair dealing count for failure to state a claim. On March 26, 2014, I entered an order granting the motion to dismiss that count. On May 5, 2014, plaintiffs filed an amended complaint. On November 17, 2014, defendant filed the instant motion for summary judgment. Plaintiffs filed objections on November 26, 2014, and defendant filed a reply on December 15, 2014.

## II.     SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. American Academy of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir. 1996). The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact. If the only issues are issues of law, then summary judgment is appropriate. Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996). If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. Factual disputes that are collateral to the substantive law will not preclude summary judgment. Id.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine. A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Id. at 249. When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. Id. at 255. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. Id. at 249-250.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 474 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

Under Missouri law,[1] plaintiff Davina Easter must establish the following elements of a vexatious refusal to pay claim: (1) she had an insurance policy with Farmers, (2) Farmers refused to pay, and (3) Farmers's refusal was without reasonable cause or excuse. Dhyne v. State Farm Fire and Cas. Co., 188 S.W.3d 454, 457 (Mo. 2006). "[T]he insured must show that the insurance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." Browning v. GuideOne Specialty Mut. Ins. Co., 341 S.W.3d 897, 903 n.7 (Mo. Ct. App. 2011); Watters v. Travel Guard Int'l, 136 S.W.3d 100, 108 (Mo. Ct. App. 2004). The vexatious refusal to pay statute "is penal in nature and must be strictly construed." Id. at 109 (citing Legg v. Certain Underwriters at Lloyd's of London, 18 S.W.3d 379, 387 (Mo. Ct. App. 1999)). "When there is an open question of law or fact, the insurance company may insist upon a judicial determination of those questions without being penalized" and "[t]he mere fact that a subsequent court decision is adverse to an insurance company's position is not sufficient reason for imposing the penalty." Watters v. Travel Guard Int'l, 136 S.W.3d at 109 (citing Wood v. Safeco Insurance Company of America, 980 S.W.2d 43, 55 (Mo. Ct. App. 1988) and Groves v. State Farm Mut. Auto. Ins. Co., 540 S.W.2d 39, 42 (Mo. banc 1976)). The existence of a litigable issue will not preclude a penalty, however, if the insurance company's attitude is shown to be vexatious and recalcitrant. Watters v. Travel Guard Intern., 136 S.W.3d at 109; Wood v. Safeco Insurance Company of America, 980 S.W.2d at 55.

---

[1] R.S. Mo. § 375.420 states: "In any action against any insurance company to recover the amount of any loss under a policy of automobile . . . insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

4

## A. COUNT 2 OF THE AMENDED COMPLAINT

Count 2 of the amended complaint reads as follows:

> COMES NOW plaintiff Davina Easter and for Count II of her causes of action against defendant Farmers, states and alleges as follows:
> 12. Plaintiff incorporates by reference paragraphs 1 through 11 as though fully set forth herein.
> 13. Davina provided defendant Farmers with the applicable medical records and bills stemming from the subject accident.
> 14. Davina has made offers to defendant Farmers to settle within the policy limits in the above-referenced insured policy.
> 15. Defendant Farmers has rejected plaintiff's offers, has ignored Davina's requests and continually refused payment of her claims despite having all of the necessary information showing that policy limits are due and owing.
> 16. Defendant's refusal to pay Davina reasonable amounts due under her insurance policy has been vexatious, without reasonable cause or excuse and is vexatious because:
>   a. Farmers knew or should have known that the above-referenced wreck was solely caused by the phantom driver;
>   b. Farmers knew or should have known Davina's severe injuries, disabilities, and lost wages were caused or contributed to be caused by the wreck;
>   c. Farmers knew or should have known Davina's harms and damages were far in excess of the policy limits available;
>   d. Farmers placed its own pecuniary interests ahead of the health, well-being and interests of its insured, Davina Easter;
>   e. Farmers recklessly and/or intentionally delayed and prolonged resolution of Davina's claims;
>   f. All other acts and omissions to be learned through discovery; and
>   g. Farmers chose to violate Missouri's unfair claims practices act, R.S. Mo § 375.1005(5) by compelling the Easters to institute suit to recover amounts due under their policy by offering substantially less than the claim is worth.
> 17. Defendant's refusal to pay reasonable amounts to Davina and/or not engaging in any meaningful settlement negotiations with Davina is vexatious, in bad faith, and without reasonable cause or excuse.
> 18. Defendant's conduct has been made solely to save money, at the expense of plaintiff's health and well-being. Farmers' conduct in placing its financial self-interest ahead of its insured's interests is in violation of Farmers' obligations to Davina.
> 19. Under R.S. Mo. § 375.420, plaintiff Davina Easter is thus entitled to damages including the full amounts of uninsured coverage under the policy, vexatious penalties, plus reasonable attorneys' fees.

## B. UNDISPUTED FACTS

On November 12, 2010, plaintiff Davina Easter was operating a motor vehicle when it collided with the rear end of a motor vehicle driven by Jeff Warner. That same

day, plaintiff Joe Easter notified defendant Farmers of the accident and Farmers opened a claim and began its investigation. On November 14, 2010, a claims representative[2] from Farmers spoke with Davina Easter and Jeff Warner regarding the facts of the accident. Two days later, Farmers informed Jeff Warner that Farmers was accepting liability for the accident.

On April 10, 2013, plaintiffs first demanded uninsured motorist coverage under the policy.

> In support of this proposed undisputed fact, defendant cites to the letter from plaintiffs' attorney dated April 10, 2013, outlining alleged damages of $865,911.28 but offering to settle for the uninsured motorist policy limits of $500,000 (D. Ex. 3).
> Plaintiffs only partially admit this fact. "Plaintiff admits that the formal settlement brochure was first sent on April 10, 2013 with significant attachments showing the damages suffered by Davina and Joe Easter. Denied as to anything further as the citation does not support that this was the first time [uninsured motorist] coverage was requested." (plaintiff's suggestions in opposition at page 3). However, plaintiffs do not point to any evidence to contradict that this was the first time such a demand had been made. Therefore, I find that this fact is undisputed.

On May 10, 2013, Farmers offered $12,753.82 to plaintiffs. On May 30, 2013, plaintiffs requested color copies of all photographs which were provided by Farmers on May 31, 2013. On July 15, 2013, Farmers contacted plaintiffs' attorney regarding the status of settlement and response to the May 10, 2013, offer. On August 21, 2013, plaintiffs' attorney informed Farmers that plaintiffs were planning to file suit. On September 9, 2013, plaintiffs filed suit and served defendant four days later.

The most important proposed undisputed fact is the following: "At the time demand was made on April 10, 2013, Farmers was aware [of] facts reasonably indicating that Plaintiff caused or was the primary cause of the accident." Obviously

---

[2] Plaintiff points out that the person from Farmers who spoke with Davina Easter and Jeff Warner was a liability adjuster as opposed to an uninsured motorist claims adjuster.

plaintiffs dispute this fact because if it were true, their vexatious refusal to pay claim would be baseless.

In support of this proposed fact, defendant cites to its claim file indicating that plaintiff Davina Easter was told that her version of the accident differed from Jeff Warner's version. The claim file also indicates that police were called to the scene and that plaintiff Davina Easter was found at fault and issued a citation. Defendant also cites to the recorded conversation between Jeff Warner and Farmers Claims Representative Al Schmidt which took place on November 15, 2010 -- three days after the accident:

Q. And before you had to stop or slow down, what would have been your approximate speed?

A. Mmm, probably 35 to 40.

Q. Okay. All right. You want to pick up maybe a block before it happened, Jeff, and kind of lead up to it and explain in your own words what you remember?

A. Um, a block before I would have been traveling through the light at Kimbrew, heading east on Battlefield. Uh, there was a small uh, Buick-like car in front of me. Uh, he slowed to get into the left hand, left hand center lane, to turn into, to make a left in the direction of apartments. Um, he didn't fully engage into that lane, he was partially riding between the yellow lines. And he had his blinker on. He then decided to pull back into the original lane he was in. That's when I slowed a little bit. Uh, and I believe he went, I believe he went back into the center lane to turn into some apartments, and that's when um, the vehicle behind me hit me.

Q. Okay. And just so you -- help me to frame this, um, approximate distance this Buick was ahead of you so to speak, maybe a car length, two car lengths, three car lengths?

A. Probably a couple of car lengths or so.

Q. Okay. Okay. And so when the Buick moves back, or attempts to move back in front of you, is it still about two car lengths?

A. Mmm... yeah, I would say so.

Q. Okay. And did that maneuver cause you to have to really cram your brakes, or just slow your car a little, or how would you describe that?

A. I just, I would say I just um, slightly applied pressure on it, just to reduce my speed a couple of miles an hour.

Q. Okay.

A. To give him plenty of room to come back in.

Q. Okay. So it wasn't like he totally cut you off and you had to really cram it. It wasn't that way.

A. No, no. I wasn't that close to him when I was behind him for him to turn into the turn lane. I wasn't like right up on his bumper at that time, no.

Q. Okay, and about um, how quickly did you get rear-ended? Was it after you applied your brakes? I mean, was it a few seconds, was it an instant, was it half a minute? You know what I'm saying?

A. It was a few seconds. And we, me and my wife both had time to, you know, see the headlights coming in our rear view mirror.

Q. I see. Okay. And how would you describe the impact? Not that you have to be an expert, was it -- and I'm giving you the gamut -- slight, light, medium, heavy -- how would you describe the impact?

A. I would say it was pretty heavy.

Q. Pretty heavy, okay. All righty. And can you give me a brief rundown, Jeff, on what went on after the collision? What did you and the other driver do, say, call the police, ambulance and that sort of thing?

A. I guess right after it . . . I was more in shock. I was like, did that really happen. Ah, then of course my first concern was my wife, to make sure she was all right. Uh, my second concern was my vehicle, to make sure that, you know, the back end wasn't, you know, falling off somewhere and then uh, after that, uh I came back and checked on my wife. Then I went down and told her, told my wife to call 911 when I went down to check on the person what was in the vehicle that hit me. She, she at that time was I think on the, what's that satellite thing called? . . . I think um, she was on that. Um, 'cause she had her cell phone in her hand. Um, but she was talking through something in the car.

Q. Gotcha.

A. Um, I just made sure that she was okay. Um, she said she was fine and then I went back up to check on my wife some more.

(D. Ex. 9, p. 2-4).

In their response, plaintiffs fail to cite to any part of the record to dispute this proposed fact. Instead, plaintiffs state that defendant's "citation does not support the

8

Case 6:13-cv-03412-SRB   Document 53   Filed 01/03/15   Page 8 of 10

claim made" and that "they had more than sufficient information showing the value of the claim was well over the amount offered". Plaintiffs then direct the court to "see plaintiffs' additional facts 14-80, set forth below."

I note here that the Scheduling Order entered on February 19, 2014, specifically directs the parties to Local Rule 56.1(a) for the format of a summary judgment motion and response. "In particular, the parties are to note that a motion should begin with a 'concise' listing of uncontroverted material facts, and the suggestions in opposition are not to include 'additional uncontroverted facts.'" In order to avoid summary judgment, plaintiffs must establish the existence of a material controverted fact, not 67 additional uncontroverted facts.

## C.     *EXISTENCE OF MATERIAL DISPUTED FACT*

The issue in this case is whether there was an open question of fact at the time defendant was called upon to pay or whether there is evidence that defendant's attitude was otherwise vexatious and recalcitrant. Defendant has presented undisputed evidence that plaintiff was primarily at fault; therefore, there was an open question of fact regarding the defendant's liability to plaintiff under the uninsured motorist provision. The purpose of uninsured motorist coverage is to take the place of the liability coverage the insured would have received had she been involved in an accident with an insured motorist. Floyd-Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 220 (Mo. 2014). Here, the undisputed evidence establishes that plaintiff was largely, if not entirely, at fault. Therefore, had the phantom driver been known and insured, there would remain a question as to whether plaintiff was entitled to the recovery sought due to Missouri's comparative fault provision, i.e., plaintiff's recoverable damages would be subject to reduction based on her percentage of fault. See Egelhoff v. Holt, 875 S.W.543 (Mo. 1994); M.A.I. 37.02.

Plaintiffs' list of additional undisputed facts are not material to the elements of their claim. The additional undisputed facts deal with Farmers' training of its employees, whether claims practices are proper under Missouri law (which are legal questions, not factual questions), when plaintiffs were informed of their uninsured motorist benefits, what medical training the claims representatives had, whether plaintiff's treating doctors were contacted, etc. None of this helps plaintiffs to establish the prima facie case of vexatious refusal to pay. Nor does any of it help plaintiffs to dispute that there was an open question of fact regarding the defendant's liability to plaintiffs under the uninsured motorist provision.

Therefore, because plaintiffs are unable to establish the third element of this claim, defendant's motion for summary judgment will be granted.

### III. CONCLUSION

I find that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law on count 2 of the amended complaint. Therefore, it is

ORDERED that the motion for summary judgment is granted.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
January 2, 2015